UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANUARY NEWCOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-CV-1885-SPM |
| | ) | |
| | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff January Newcom ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

## I. PROCEDURAL BACKGROUND

On January 12, 2017, Plaintiff applied for SSI, alleging that she had been unable to work since May 31, 2006, due to depression, bipolar, sleeping disorder, and back problems. (Tr. 153-56, 173). On February 24, 2017, her application was denied. (Tr. 81-86). On April 27, 2017, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 87). On August 25, 2018, Plaintiff amended her alleged disability onset date to January 12, 2017. (Tr. 166). On

October 11, 2018, the ALJ held a hearing on Plaintiff's claim. (Tr. 33-45). On December 26, 2018, the ALJ issued an unfavorable decision. (Tr. 11-26). Plaintiff requested a review of the ALJ's decision by the Social Security Administration's Appeals Council, and on May 8, 2019 Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

II.  FACTUAL BACKGROUND

A.  Plaintiff's Function Report and Testimony

In her February 2017 Function Report, Plaintiff reported that she is unable to work due to depression, anxiety around people, and back problems. (Tr. 188). Her depression makes her not want to do anything, and she sits on the couch, watches television, and cries all the time. (Tr. 190, 192, 195). She does some light work around the house, including cooking simple meals, dusting, and doing dishes and laundry, and she sometimes goes to the corner store for small grocery trips. (Tr. 189-91, 195). However, she does not do any work outside and does not sweep because it hurts her back. (Tr. 189-90). She cannot lift anything over 15-20 pounds; she cannot sit, stand, or walk very long because it hurts her back; and she can only walk about a block before resting. (Tr. 193). She can follow spoken instructions well if they are explained, but she cannot follow written instructions very well. (Tr. 193). She cannot handle stress well at all and does not like to be around people outside her family. (Tr. 192, 194). She takes Seroquel and Remeron for sleep and depression, Wellbutrin for depression, Xanax for anxiety and depression, Oxycodone for pain, Gabapentin as a muscle relaxer, and Requip for restless leg syndrome. (Tr. 206).

At the hearing before the ALJ in October 2018, Plaintiff testified that she last worked in 2006, which involved part-time work carrying folders. (Tr. 40-41). Asked why she could not work a full time job, she indicated that she has insomnia and sometimes cannot sleep for a week and a

half; that other times she cannot get up for a week or longer and just lies and sleeps; that she does not like to be in public, that she does not like to speak to other people, that she keeps to herself, that she is depressed, and that she cries a lot. (Tr. 41). She loses her memory a lot; she has a hard time concentrating; and she does not do well around crowds of people. (Tr. 46). She gets injections for pain in in her back and shoulder. (Tr. 42). She also gets nerve cramps in her hand, legs, and feet that make it so that she cannot even move her body. (Tr. 44). She can dress, bathe, comb her hair, and brush her teeth. (Tr. 47). She can lift 15 to 18 pounds with her right arm but only one pound with her left. (Tr. 42, 48). She uses a cane if she is going far; it was recommended to her by her pain doctor, and she uses it at least five times a week. (Tr. 42-43).

## B. Treatment Records

### 1. Treatment Records Relevant to Mental Impairments

The record contains regular treatment notes and mental status examinations from Plaintiff's longtime psychiatrist, Dr. Chaganti, for the period from December 2015 to August 2017. (Tr. 273-87, 517-24). At those visits, Plaintiff was consistently noted to have a limited attention span and concentration and to have difficulty with recent memory. She often had an appropriate mood and affect, but sometimes had an anxious or depressed mood or affect. She usually had adequate sleep and adequate energy/interest, but sometimes had decreased sleep and/or decreased energy. (Tr. 273-87, 517-24). Her mental status examinations were otherwise unremarkable, showing appropriate attire and appearance; cooperative behavior; orientation to person, place, time, day, date, year, season, and situation; purposeful psychomotor activity; clear and goal-directed speech; logical thought processes; a sequential flow of thought, and an average intellect. (Tr. 273-87, 517-24). On the CGI-8 (Clinical Impression-Severity Scale), a scale that goes from 1 ("normal, not ill at all") to 7 ("among the most extremely ill"), when asked, "How mentally ill was patient at this

time," Plaintiff's psychiatrist nearly always found that Plaintiff was at a 3 ("mildly ill"). (Tr. 273-87, 517-24).

On August 28, 2017, Plaintiff was admitted to the hospital for a suicide attempt. (Tr. 510). She required intubation and ICU admission and was transferred to psychiatry. (Tr. 510). Plaintiff reported that her ex had recently moved back in with her, and that she had found out that he had been texting and meeting another woman. (Tr. 508-09). Plaintiff confronted him and he refused to leave, and Plaintiff reported that she felt overwhelmed and impulsively took the pills. (Tr. 508-09). She was diagnosed with "intentional overdose in context of ongoing stressors." (Tr. 503). It was noted that she had likely major depressive disorder, recurrent, severe, but with significant minimization of symptoms, and she was started on psychotropic medications. (Tr. 511).

The record appears to contain only one psychiatric treatment note dated after Plaintiff's suicide attempt.[1] On July 13, 2018, Plaintiff saw Dr. Harmeeta Singh; the "Chief Complaint" was, "I have a hearing in October." She was not attending therapy. Plaintiff reported increased social stressors from her ex and children, increased anxiety with racing thoughts, and problems falling asleep and maintaining sleep. She reported feeling overwhelmed, feeling depressed with lack of motivation, having low energy, and having lack of interest. On mental status examination, she had a depressed mood and an affect that was congruent, blunted, and anxious, and she had passive suicidal ideations. Otherwise, however, her mental status examination was unremarkable: she was cooperative and alert; she had appropriate attire and fair grooming and hygiene; her eye contact was good; her speech was clear, spontaneous, and at a normal rate, tone, and volume; her memory

---

[1] Although Dr. Singh's note says at the top that it is a "Follow-Up Visit," (Tr. 527), the record contains no other treatment notes from Dr. Singh. Additionally, Plaintiff states in her Statement of Uncontroverted Material Facts that "Plaintiff had a one-time visit with Dr. Harmeeta Singh." Pl.'s Statement of Uncontroverted Material Facts, Doc. 18-1, at ¶ 29.

was normal; her intellectual functioning was average; and she had fair judgment and insight. Her Seroquel was increased to help sleep. (Tr. 527). She was diagnosed with bipolar disorder, ADHD, generalized anxiety disorder, and insomnia. (Tr. 526).

### 2. *Treatment Records Relevant to Physical Impairments*

Since 2015 or earlier, Plaintiff has been seeing Gurpreet Pradda, M.D., a pain management doctor, for back pain, cervical pain, and/or left shoulder pain, and she has frequently received injections for pain relief. In December 2016 (shortly before the alleged onset date), it was noted that she had axial back pain and a history of cervical pain, and she was given injections at L3-S1. (Tr. 292). Plaintiff reported immediate reduction in symptoms, with normal ranges of motion. (Tr. 293). Plaintiff did not return to Dr. Padda again until about a year later, in December 2017. (Tr. 393). At that time, it was again noted that she had axial back pain with failure of conservative therapy; lumbar pain was noted, but not cervical or shoulder pain. (Tr. 393). She had injections at L3-S1 and had resolution of pain within 30 seconds. (Tr. 393-94). Plaintiff returned in January and February 2018 for low back pain and received injections at L3-L4, L5-S1; each of these injections provided nearly complete relief immediately after the procedure, though it is unclear how long that relief lasted. (Tr. 386, 388-89, 391). On March 14, 2018, Plaintiff returned, and it appears that her condition had worsened: it was noted that she had a severe antalgic gait, with a pelvic tilt approximately 5-7 degrees, and the pain worsened with ambulation and going from a sitting to a standing position. She was given sacroiliac joint injections and received a nearly 80-90% reduction in SI joint symptomology, with improvement in gait and mobility. (Tr. 384-85). At Plaintiff's next two visits, she reported lumbar pain, but her gait was normal. (Tr. 461, 466).

At subsequent visits, inn late April 2018 through August 2018, Plaintiff stopped complaining of lumbar pain; instead, she complained of neck pain and/or shoulder pain and

received cervical injections, which often led to an immediate reduction in symptoms. (Tr. 376-83, 416-17, 425, 427, 431, 436, 440, 444, 446, 449, 456). She indicated that the pain was aching and intermittent, was aggravated by lifting a baby, and was helped by rest, medications, and injections. (Tr. 416).

Aside from the March 2018 visit at which Plaintiff had a "severe antalgic gait," Plaintiff had a normal gait and station during the relevant period (Tr. 308, 410, 416, 421, 427, 434, 436, 449, 454, 461, 466, 471, 480), and she consistently reported that she did not feel off-balance or unsteady when she walked. (Tr. 311, 413, 419, 424, 430, 434, 439, 445, 452, 457, 464, 469, 474, 483). Painful range of motion was often noted. (Tr. 308, 416, 427, 449, 461, 466). She had normal muscle strength and tone. (Tr. 461, 466). She was regularly asked whether she felt tired during the day, and her answers ranged from "rarely" to "sometimes." (Tr. 311, 413, 419, 424, 430, 434, 439, 445, 452, 457, 464, 469, 474, 483).

Imaging of the cervical and lumbar spines and the left shoulder showed several abnormalities. A December 2017 MRI showed straightening of the cervical spine, disc desiccation, reduced disc height, and diffuse disc protrusion. (Tr. 403-04). A December 2017 lumbar spine MRI showed straightening of the lumbar spine, disc desiccation, Schmorl's node, diffuse disc protrusion, and focal central disc protrusion. (Tr. 400-01). A March 2018 MRI of the left shoulder showed supraspinatus tendinosis, intratendinous tear of the distal supraspinatus tendon at insertion site, and acromioclavicular joint hypertrophy (Tr. 396)

### C.  Opinion Evidence

On February 23, 2017. Martin Isenberg, Ph.D., reviewed Plaintiff's records and opined that Plaintiff had mild limitations in the ability to understand, remember, or apply information; mild limitations in the ability to interact with others; mild limitations in concentration, persistence, and

pace; and no limitations in the ability to adapt or manage herself. (Tr. 73-74). He found her mental impairments non-severe. (Tr. 74).

On November 15, 2017, Plaintiff was seen for a psychological evaluation by Laura R. Tishey, Psy.D., LLC. (Tr. 235-37). Dr. Tishey noted that Plaintiff looked tired and had poor grooming and hygiene; her eye contact was intermittent; her facial expression was alert; her mood appeared depressed, with congruent affect; her speech was monotone and low but she engaged the examiner spontaneously; she had no signs of a thought disorder; she endorsed currently feeling depressed, with insomnia, poor appetite, low energy, crying spells, and low self-worth; and she endorsed a history of excessive worrying and poor coping skills. (Tr. 236). Dr. Tishey stated that Plaintiff said she could manage her own finances but that she struggles to consistently perform hygiene tasks and chores when feeling depressed. Plaintiff indicated that she relied on her boyfriend to cook and grocery shop, because of her mood. Plaintiff stated that she did not drive because of road rage. She endorsed a history of difficulty getting along with authority figures, though she was polite during the examination. Dr. Tishey concluded that Plaintiff "displays signs and endorses symptoms suggestive of a moderate to severe depression, which is likely worsened by chronic prescription opiate and benzodiazepine use." Dr. Tishey opined that Plaintiff had a mental disability that prevents her from engaging in that employment for which her age, training, experience, or education will fit her, and that the expected duration of the disability would be 13 months or more. (Tr. 237).

On October 9, 2018, Dr. Singh (a psychiatrist who treated Plaintiff on one occasion) completed a Mental Medical Source Statement for Plaintiff. (Tr. 530-33). She opined, *inter alia*, that Plaintiff had marked limitations in the ability to maintain necessary concentration to persist at simple routine tasks; marked limitations in the ability to initiate and complete tasks in a timely

7

manner; moderate limitations in the ability to ignore or avoid distractions; moderate limitations in the ability to sustain ordinary routine and regular attendance; moderate limitations in the ability to follow one-or two step oral instructions to carry out a task; moderate limitations in the ability to use reason and judgment to make work-related decisions; and moderate limitations in the ability to understand and learn terms, instructions, and procedures. (Tr. 530-31). Dr. Singh also found that Plaintiff would have marked limitations in the ability to work a full day without needing more than the allotted number of rest periods; moderate to marked limitations in the ability to function independently; moderate limitations in the ability to regulate emotions, control behavior, and maintain wellbeing in a work setting; and no limitations in the ability to distinguish between acceptable and unacceptable work performance. (Tr. 531). She also found that Plaintiff would have marked limitations in the ability to respond appropriately to requests, criticism, suggestions, corrections, and challenges; moderate limitations in the ability to keep social interactions free of excessive irritability, argumentativeness, sensitivity or suspiciousness; moderate limitations in the ability to ask simple questions or request help; and moderate limitations in the ability to maintain socially appropriate behavior. (Tr. 532). She found that Plaintiff would need to miss work for psychologically-based symptoms three times a month or more. (Tr.531). She found that Plaintiff could tolerate only casual and infrequent contact with coworkers and the public and limited interactions with supervisors. (Tr. 532).

The record contains no opinion evidence related to Plaintiff's physical impairments.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled

a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at

611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since December 30, 2016, the application date; that Plaintiff

had the severe impairments of degenerative disc disease of the cervical and lumbar spine, left shoulder dysfunction, obesity, depression, attention deficit-hyperactivity disorder (ADHD), generalized anxiety disorder, and a history of cannabis abuse (Tr. 18); and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she should never be required to climb a ladder, rope or scaffold. She can occasionally climb ramps and stairs. She can occasionally crawl. She can frequently balance, stoop, kneel and crouch. She can only occasionally reach overhead with her left upper extremity. All other reaching with her left upper extremity is able to be performed on a frequent basis. She must avoid hazards, such as unprotected heights and proximity to moving mechanical parts. She is able to perform simple, routine tasks in a working environment involving only occasional interaction with supervisors and co-workers. In addition, she can frequently deal with the public.

(Tr. 20). At Step Four, the ALJ found that Plaintiff had no past relevant work. (Tr. 24). At Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including representative occupations such as garment bagger, baker's helper, and clothing sorter. (Tr. 25). Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, since December 30, 2016. (Tr. 26).

## V.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the RFC is not supported by substantial evidence, including "some medical evidence"; and (2) that the ALJ did not properly evaluate Plaintiff's complaints of pain.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The RFC Assessment

Plaintiff's first argument is that the RFC is not supported by substantial evidence. Specifically, Plaintiff argues that the RFC is not supported by "some medical evidence" that addressed her ability to function in the workplace, that the ALJ did not include a narrative discussion describing how the ALJ reached the RFC finding, that the ALJ relied too much on descriptions of Plaintiff's daily activities in the function report, and that the ALJ improperly drew her own inference from raw medical findings.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

1.   *The Mental RFC Assessment*

The Court first considers the mental RFC assessment. After careful review of the record, the Court finds that the ALJ's determination that Plaintiff had the mental capacity to perform simple, routine tasks in a working environment involving only occasional interaction with coworkers and supervisors and frequent interactions with the public was supported by substantial evidence, including medical evidence.

First, the RFC is supported by Plaintiff's psychiatric treatment notes, which reflect primarily mild to moderate mental symptoms. During the relevant period, Plaintiff's psychiatric examinations show that Plaintiff had limitations in attention span, concentration, and recent memory, and sometimes had an anxious or depressed mood or affect. The ALJ reasonably accounted for those limitations by limiting Plaintiff to performing simple, routine tasks in a working environment involving limited interactions with others. However, aside from those issues, Plaintiff's mental status examinations were generally unremarkable. Although Plaintiff indicated that she preferred to be alone, did not like to interact with people outside of her family, and spent all day in her pajamas, Plaintiff's psychiatrists consistently found her behavior to be cooperative, with appropriate attire and appearance. (Tr. 19, 24, 511, 517-24, 527). Although Plaintiff indicated that she cries much of the day, Plaintiff's mood and affect were generally either appropriate or sometimes anxious or depressed, and the notes do not suggest that she was tearful at her appointments. (Tr. 19, 518-24, 527). She also consistently had clear and goal-directed speech logical thought processes; a sequential flow of thought, and an average intellect. (Tr. 19, 517-24, 527). Additionally, Plaintiff's longtime treating psychiatrist, Dr. Chaganti, consistently assigned her a score of only "mildly ill" on the CGI-8 Clinical Impression-Severity Scale during the relevant period. (Tr. 518-24).

In addition, contrary to Plaintiff's testimony that she sometimes cannot sleep for a week and a half and other times sleeps for a week or longer, the ALJ reasonably considered that treatment notes often indicated that her sleep was adequate (Tr. 21, 24, 517-23) and that she only rarely or sometimes felt tired during the day (Tr. 311, 413, 419, 424, 430, 434, 439, 445, 452, 457, 464, 469, 474, 483).

The ALJ discussed Plaintiff's suicide attempt and hospitalization in August 2017, and the ALJ reasonably found that although this was a serious incident, it was apparently related to significant relationship issues with her long-time boyfriend, and therefore had a situational component. (Tr. 23). It was reasonable for the ALJ to consider the situational nature of her depression in finding it not disabling. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (finding the ALJ reasonably considered the situational nature of the claimant's depression in finding it non-severe). The ALJ also considered that Plaintiff was discharged in stable condition, and that the attempt appears to have been an isolated incident. (Tr. 23).

As the ALJ also noted, after Plaintiff's suicide attempt, there was only one psychiatric treatment note in the record—a July 2018 note from Dr. Harmeeta Singh at which Plaintiff's chief concern was noted to be her upcoming disability hearing. (Tr. 24, 527). At that visit, Dr. Singh noted that Plaintiff had a depressed mood; an affect that was congruent, blunted, and anxious; and passive suicidal ideations. (Tr. 527). However, Dr. Singh also found that she was cooperative and alert; had appropriate attire and fair grooming and hygiene; had good eye contact; had speech that was clear, spontaneous, and at a normal rate, tone, and volume; had a normal memory; had average intellectual functioning; and had fair judgment and insight. (Tr. 527). These largely normal treatment notes, along with significant gaps in treatment in the record, provide support for the mental RFC assessment.

Second, the ALJ reasonably found that some of Plaintiff's own statements regarding her abilities and daily activities supported the RFC finding. (Tr. 19, 24). Specifically, the ALJ considered that Plaintiff reported being able to count change, pay bills, handle a savings account balance a checkbook, and follow spoken instructions well if they were adequately explained. (Tr. 19, 191-93). She also reported that although she does not like to be out in public, she is capable of going to the corner store to shop and is capable of going to her doctor's appointments independently. (Tr. 19). Plaintiff also reported that she had never been fired from a job for an inability to get along with others. (Tr. 19, 193). The ALJ also noted that Plaintiff was able to answer all of the questions at the hearing with no indication of a cognitive deficit. (Tr. 19). These statements provide some support for the ALJ's finding that Plaintiff could perform simple, routine tasks involving only occasional interaction with coworkers and supervisors.

Third, the ALJ discussed and reasonably weighed the opinion evidence in the record in making the mental RFC assessment. The ALJ gave minimal weight to the opinion of state agency examiner Martin Isenberg, Ph.D., who found only non-severe mental impairments, because the ALJ's review of the record indicated that she was under consistent mental health treatment and was moderately limited in three areas of mental functioning, and thus had a severe mental impairment. (Tr. 20). The ALJ also considered and weighed the opinions of consultative examiner Dr. Tishey and one-time treating physician Dr. Singh. (Tr. 23-24).[2] The ALJ properly disregarded Dr. Tishey's opinion that Plaintiff was unable to engage in gainful employment, because that is an opinion on an issue reserved for the Commissioner. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited

---

[2] Plaintiff does not specifically challenge the weight given to these opinions and does not argue that either of them should have been given more weight. The Court's review of the record shows that the ALJ gave good reasons, supported by substantial evidence, for discounting both opinions.

when they simply state that a claimant can not be gainfully employed, because they are merely 'opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].'") (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)). The ALJ also reasonably discounted Dr. Tishey's opinion because it was based largely on subjective complaints and because at the time (in late 2017, shortly after her suicide attempt), her complaints appeared to be primarily situational. (Tr. 23). With regard to Dr. Singh, the ALJ reasonably gave her opinion minimal weight after finding that the extreme limitations her opinion were inconsistent with the largely unremarkable findings in Dr. Singh's own treatment note and in the treatment notes of Dr. Chaganti. (Tr. 24). The ALJ also reasonably considered that Dr. Singh had only seen Plaintiff on one occasion (Tr. 24).

In sum, the Court finds that the mental RFC assessment is supported by substantial evidence, including "some medical evidence"; this evidence includes the psychiatric treatment notes, Plaintiff's own statements about her abilities, and the opinion evidence in the record. Although the mental RFC assessment does not mirror any of the opinions in the record, it is well-established that the ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in determining a claimant's RFC. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quotation marks omitted)); *Martinez v. Colvin*, No. 12–3042–CV–S–ODS–SSA, 2013 WL 1945703, at *5 (W.D. Mo. May 10, 2013 (rejecting the plaintiff's argument that because the ALJ gave little weight to the opinions of the plaintiff's physicians, the RFC assessment was necessarily the product of unsupported speculation). Instead, "[i]t is the ALJ's responsibility to determine [claimant's] RFC based on all the relevant evidence." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted). Here, although the RFC did not mirror any of the particular opinions in the record,

the ALJ properly determined Plaintiff's mental RFC based on all of the evidence in the record, including the opinion evidence.

## 2.   *The Physical RFC Assessment*

The Court next considers the ALJ's physical RFC assessment—the finding that Plaintiff is able to perform light work as defined in 20 CFR 416.967(b)[3], except she should never be required to climb a ladder, rope or scaffold; she can occasionally climb ramps and stairs; she can occasionally crawl; she can frequently balance, stoop, kneel and crouch; she can only occasionally reach overhead with her left upper extremity; all other reaching with her left upper extremity is able to be performed on a frequent basis; and she must avoid hazards, such as unprotected heights and proximity to moving mechanical parts. After consideration of the record as a whole, the Court finds that this assessment was supported by substantial evidence, including medical evidence.

As the ALJ recognized, Plaintiff has at times experienced back pain, neck pain, and left shoulder pain, and that pain is supported by objective findings of pain with range of motion, abnormalities found on imaging, and Plaintiff's regular treatment with injections from a pain management doctor. (Tr. 22-23). However, the ALJ properly considered evidence, including

---

[3] "Light work" is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

medical evidence, suggesting that Plaintiff's back and shoulder pain were not so limiting that they would preclude her from performing most of the requirements of light work.

First, the ALJ reasonably considered the numerous unremarkable physical objective findings in the record that undermine Plaintiff's allegations of disabling pain. Although Plaintiff testified that she can only walk for about a block and must use a cane (suggested by her pain management doctor) to walk longer distances (Tr. 43), the ALJ reasonably pointed out that the record does not support that claim. The ALJ correctly noted that there is no indication in the record that any physician recommended the use of a cane. (Tr. 22). The ALJ also correctly noted that Plaintiff was almost always observed to have a normal gait and station at her pain management visits. (Tr. 22, 308, 410, 416, 421, 427, 434, 436, 449, 454, 461, 466, 471, 480). Moreover, the ALJ noted evidence that when Plaintiff's pain management doctors regularly asked her whether she felt off-balance or unsteady when she walked, Plaintiff answered, "no." (Tr. 23, 311, 413, 419, 424, 430, 434, 439, 445, 452, 457, 464, 469, 474, 483). Dr. Singh also noted that Plaintiff had a steady gait and used no assistive device. (Tr. 527).

Second, the ALJ also reasonably considered Plaintiff's daily activities in assessing her RFC. Plaintiff reported that she does some light work around the house, including cooking simple meals, doing dishes, dusting, doing laundry, and going shopping for groceries at the corner store. (Tr. 22, 189-91, 195). She also reported being able to lift 15 to 20 pounds having no physical problems with personal grooming and hygiene. (Tr. 22, 42, 193). Although Plaintiff reported doing these activities only for limited periods of time, her Function Report suggests that was primarily due to her lack of motivation and not her physical limitations. While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), the types of daily activities Plaintiff

reported tend undermine Plaintiff's complaints of disabling pain and to support the ALJ's finding that Plaintiff can perform light work. *See, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations."). The ALJ properly relied on these activities along with the other evidence in formulating Plaintiff's RFC.

Third, the ALJ considered evidence that Plaintiff received significant relief and improvement from her pain injections. (Tr. 22). For example, at Plaintiff's visit in March 2018, at which Plaintiff was found to have a severe antalgic gait and pain that worsened with ambulation; Plaintiff received a nearly 80-90% reduction in pain from an injection. (Tr. 384). At her subsequent visits, no gait problems were mentioned. Several other records also indicate that Plaintiff received pain relief and significant reductions in symptoms from her injections and medications. (Tr. 292-93, 381, 383, 386, 388-89, 391, 393-94, 416).

Additionally, the Court's review of the treatment records suggests that Plaintiff's complaints of lower back pain were intermittent during the relevant period and appear to have responded to treatment. In January 2017, Plaintiff complained of lower back pain and had a limited lumbar range of motion. (Tr. 308-09). Plaintiff then did not seek treatment for her physical symptoms for almost a year, returning in December 2017. (Tr. 391-93). Between December 2017 and April 2018, Plaintiff complained of lower back pain, sometimes had limited lumbar range of

motion, and was given lumbar or sacroiliac injections that were noted to provided significant immediate relief. (Tr. 384-35, 386, 388-89, 391). However, by late April 2018, Plaintiff was no longer reporting lower back pain to her pain management doctor; instead, she was reporting neck and/or shoulder pain.

The record also indicates that Plaintiff's shoulder pain was intermittent during the relevant period. Although some complaints of neck and/or shoulder pain are present in the records dated prior to the alleged disability onset date in January 2017 and beginning again in April 2018, it appears that for the vast majority of the relevant period, Plaintiff did not report (or receive injections for) neck or shoulder pain. Additionally, as with her lumbar pain, it appears that Plaintiff received at least some relief from medications and injections for the neck and shoulder pain she reported between April and August 2018. (Tr. 381, 416). The intermittent nature of Plaintiff's reports of pain to her treatment providers also suggests that they responded to treatment and were not as limiting as Plaintiff suggested.

Finally, the Court notes that Plaintiff did not offer any opinion evidence from her medical providers or others to support her assertion that her physical impairments were disabling. As discussed above, it is Plaintiff's burden, not the Commissioner's burden, to prove the RFC. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The ALJ reasonably found that Plaintiff had not met her burden of showing an RFC more restrictive than the one assessed by the ALJ.

Plaintiff argues that the ALJ impermissibly made her own medical findings and drew her own inferences from medical reports rather than relying on medical opinion evidence. The Court disagrees. It was appropriate for the ALJ to discuss and evaluate the objective medical evidence in evaluating Plaintiff's RFC. (Tr. 22-23). *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical

21

evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Moreover, the ALJ did not rely solely on her own evaluation of the objective medical evidence, but also on Plaintiff's reports to her physicians, Plaintiff's physicians' observations of Plaintiff, and Plaintiff's own descriptions of her activities and limitations. On the specific facts of this case, the Court finds that the record contains substantial evidence, including medical evidence, in support of the RFC assessment. *See, e.g., Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) (affirming a finding that the claimant was not disabled; noting, "While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC"); *Hensley v. Colvin*, 829 F.3d 926, 929-34 (8th Cir. 2016) (upholding the ALJ's finding that the plaintiff could perform sedentary work despite the absence of specific medical opinion evidence; finding "adequate medical evidence of [the plaintiff's] ability to function in the workplace" where the plaintiff's treating physician found that the plaintiff was in no acute distress and had a normal knee exam and gait; another physician found that his knee assessment was normal and he had "full knee range, good lower limb and spinal flexibility"; and the plaintiff reported greatly reduced or nonexistent knee and back pain after treatment).

Plaintiff also argues that the ALJ's decision does not "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as required by Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Court agrees that the ALJ's decision could have included a clearer explanation of how the evidence supported each of her findings, particularly with regard to the physical RFC assessment. However, the Court "will not set aside an administrative finding based on an arguable deficiency in opinion-writing

technique when it is unlikely it affected the outcome." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (internal quotation marks omitted). *See also Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (no remand required where the ALJ did not include an explicit function-by-function narrative discussion but clearly considered the relevant functions and implicitly found no limitations in them). Here, Plaintiff has not shown that that the ALJ's failure to include a more detailed discussion of how the evidence supported her conclusion likely affected the outcome of the case, and the Court finds no reversible error.

In sum, the Court finds that the RFC assessment was supported by substantial evidence. The record contains conflicting evidence, some of which might support limitations greater than those assessed by the ALJ. However, the ALJ reasonably weighed the evidence in a manner consistent with the evidence and the regulations. The ALJ's decision fell within the "zone of choice," and this Court may not reverse that decision even if this Court might have reached a different conclusion. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

### C.  The Evaluation of Plaintiff's Complaints of Pain

Plaintiff's second argument is that the ALJ did not properly evaluate Plaintiff's complaints of pain. Specifically, Plaintiff argues that the ALJ discounted Plaintiff's complaints of pain without identifying specific inconsistencies that supported that decision and without discussing most of the relevant factors.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017

23

WL 5180304, at *4 (Oct. 25, 2017).[4] In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. § 416.929(c)(3) (same).

Social Security Ruling 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's symptoms of pain, consistent with SSR 16-3p and the relevant regulations, and that her assessment is supported by substantial evidence. As a preliminary matter, the Court notes that the

---

[4] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 416.929.

ALJ did not entirely discredit Plaintiff's complaints of pain in her neck, back, and shoulder. The ALJ acknowledged Plaintiff's testimony that she had pain and difficulty lifting heavy weights, and the ALJ limited Plaintiff to light work with additional limitations. (Tr. 20). To the extent that the ALJ did not find all of Plaintiff's claimed symptoms to create limitations that should be included in the RFC, the ALJ did so only after conducting an appropriate analysis of the record and the relevant factors, and making specific findings regarding the consistency of Plaintiff's asserted symptoms with the record.

The ALJ expressly recognized that "pain, and the extent of pain, cannot be objectively verified or measured," that "pain is a completely subjective phenomenon," and that "consequently, [the ALJ] must look to whether the claimant's subjective complaints are consistent with the evidence to the extent that her pain is disabling." (Tr. 21-22). The ALJ noted that "the criteria of 20 C.F.R. 404 1529 and 416.929" are used in making this determination." (Tr. 22). The ALJ also noted that she was applying SSR 16-3p in making her assessment. (Tr. 21). The ALJ then went on to discuss several of the relevant factors.

First, as discussed above, the ALJ considered Plaintiff's own reports regarding her daily activities (including her ability to do cook simple meals, do laundry, and do dishes), which the ALJ reasonably found undermined her complaints of disabling pain. *See, e.g., Medhaug*, 578 F.3d at 817 ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

Second, as also discussed above, the ALJ considered the objective medical evidence, including findings of normal gait and station. (Tr. 22-23). Although an ALJ may not reject a claimant's statements about the intensity and persistence of his symptoms "solely because the available objective medical evidence does not substantiate" those statements, the regulations

recognize that objective medical evidence is "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 416.929(c)(2). *See also Goff v. Barnhart,* 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain).

Third, the ALJ discussed the effectiveness of Plaintiff's injections, which at times provided significant improvement. (Tr. 22-23). *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Fourth, the ALJ discussed inconsistencies between Plaintiff's allegations and the rest of the evidence, such as the inconsistency between her allegation that she regularly used a cane for walking and her pain management notes indicating that her gait was normal and she consistently told her doctor that she did not feel unsteady or off-balance when walking. (Tr. 22). *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (noting that an ALJ may consider "inherent inconsistencies or other circumstances" in assessing subjective complaints) (quotation marks omitted); *Rogers v. Astrue*, 479 F. App'x. 22, 23 (8th Cir. 2012) (affirming the ALJ's decision and noting that the ALJ had discounted the plaintiff's subjective complaints based on inconsistent statements the plaintiff had made).

In sum, the Court finds that the ALJ conducted an express evaluation of Plaintiff's allegations of pain, considered several of the relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. Although the ALJ did not expressly discuss all of the relevant factors, she was not required to do so. The Court also notes that Plaintiff does

not explain how any of the relevant factors not expressly discussed by the ALJ  (such as functional restrictions, the frequency and duration of symptoms, or work history) would have provided more support for Plaintiff's allegations of disabling pain, nor is it apparent to the Court. The appropriate weight to give to a claimant's allegations of subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). Because the ALJ's evaluation of Plaintiff's complaints of pain is supported by substantial evidence, the Court must defer to that evaluation. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## VI.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2020.